NINA F. LOCKER State Bar No. 123838
IGNACIO E. SALCEDA, State Bar No. 164017
EVAN L. SEITE, State Bar No. 274641
BETTY CHANG ROWE, State Bar No. 214068
LAURA G. AMADON, State Bar No. 321524
WILSON SONSINI GOODRICH & ROSATI
Professional Corporation
650 Page Mill Road
Palo Alto, CA 94304-1050
Telephone:     (650) 493-9300
Facsimile:     (650) 565-5100
Email:         nlocker@wsgr.com
               isalceda@wsgr.com
               eseite@wsgr.com
               browe@wsgr.com
               lamadon@wsgr.com

*Attorneys for Defendants Nutanix, Inc.,*
*Dheeraj Pandey, and Duston M. Williams*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN FRANCISCO DIVISION

| | |
|---|---|
| JOHN P. NORTON, ON BEHALF OF THE NORTON FAMILY LIVING TRUST UAD 11/15/2002, and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>NUTANIX, INC., DHEERAJ PANDEY, and DUSTON M. WILLIAMS,<br><br>Defendants. | Case No. 3:21-cv-04080-WHO<br><br>**DEFENDANTS' OPPOSITION TO LEAD PLAINTIFF'S ADMINISTRATIVE MOTION FOR LEAVE TO FILE A REVISED FIRST AMENDED COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS** |

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| City of Miami | City of Miami Fire Fighters' & Police Officers' Retirement Trust |
| CMC | Case Management Conference held on May 24, 2022 (*Norton* ECF No. 59) |
| Defendants | Nutanix, Inc., Dheeraj Pandey, Duston M. Williams |
| FAC | Norton's First Amended Complaint for Violations of the Federal Securities Laws (*Norton* ECF No. 74-4) |
| L&K | Levi & Korsinsky, LLP |
| Motion or Mot. | Norton's Administrative Motion for Leave to File a Revised First Amended Complaint for Violations of the Federal Securities Laws (*Norton* ECF No. 85) |
| Norton | Lead Plaintiff John P. Norton on behalf of the Norton Family Living Trust UAD 11/15/2002 |
| *Norton* Action | This action, which is captioned *John P. Norton on behalf of the Norton Family Living Trust UAD 11/15/2002 v. Nutanix, Inc., et al.*, Case No. 3:21-cv-04080-WHO |
| Nutanix | Nutanix, Inc. |
| *Nutanix* Action | The related securities class action captioned *In re Nutanix, Inc. Securities Litigation*, Case No. 3:19-cv-01651-WHO |
| Order | Order denying Defendants' Motion to Dismiss, filed September 11, 2020 in *Nutanix* Action (*Nutanix* ECF No. 140) |
| Scheduling Order | Civil Minutes of Proceedings (*Norton* ECF No. 60) |
| TAC | The Third Amended Complaint for Violations of the Federal Securities Laws filed in the *Nutanix* Action |

SD ¶

Declaration of Evan L. Seite in Support of Defendants' Opposition to Lead Plaintiff's Administrative Motion, filed herewith

Under Civil Local Rule 7-11(c), Defendants submit this Opposition to Norton's Motion.

## INTRODUCTION

With his FAC, Norton pled himself out of a case. The Court permitted this securities class action to proceed beyond the pleading stage by denying in part Defendants' motion to dismiss, holding that plaintiffs adequately pleaded falsity and scienter with respect to six challenged statements regarding Nutanix's sales pipeline and sales productivity. Order at 12-17. Although the challenged statements that survived dismissal were concededly accurate on their face, the Court held that they were adequately pleaded to be misleading based on plaintiffs' allegations that the statements "concealed a '*massive decline in sales productivity*'" and that Nutanix's sales pipeline was "*declining substantially*." Order at 2, 17 (emphasis added).

Norton filed the FAC in an attempt to buttress his allegations with materials Nutanix has produced in discovery. One of the key additions to the FAC is Norton's claim that Defendants were aware of the falsity of their challenged statements due to Nutanix's undisclosed internal financial metrics, which Norton has cited and attached as an exhibit to the FAC. The problem, however, is that the financial metrics prove beyond any dispute that Nutanix's sales pipeline and sales productivity were *strong and growing* precisely when Norton alleges they were in freefall and, thereby, directly undermine the allegations that this Court credited—and that were central to the Court's holding—when it allowed this action to proceed.

Given all this, it is hardly surprising that Norton would like to take a mulligan on his FAC. But this isn't a friendly round of golf, it's a serious securities litigation matter. Norton's FAC establishes that the very heart of his claim *is dead wrong* and, unsurprisingly, his purported request for "administrative relief" to amend his FAC is improper. The Motion should be denied.

## RELEVANT BACKGROUND

The background to the instant Motion begins with this Court's Order granting in part and denying in part Defendants' motion to dismiss in the related *Nutanix* Action. That Order allowed six challenged statements regarding Nutanix's sales pipeline and sales productivity to remain in the case. Even though the Court acknowledged that the challenged statements were concededly accurate (Order at 11-12), the Court held that plaintiffs adequately pleaded that the statements

were misleading based on plaintiffs' allegations that Nutanix concealed "rapidly declining sales pipeline," "high levels of [sales force] attrition," and "poor" sales productivity. *Id.* at 13.

The causes of action, challenged statements, and underlying theory of securities fraud in the *Norton* action are identical to those at issue in *Nutanix*. The *Norton* and *Nutanix* Actions also share counsel: Norton's counsel, L&K, was formerly lead counsel in the *Nutanix* Action and currently serves as counsel for the named plaintiff, City of Miami, in the *Nutanix* Action. *E.g.*, *Nutanix* ECF No. 265 at 19-20. Given that the *Nutanix* and *Norton* Actions are based on identical theories of fraud, the parties here adopted the Court's previous motion to dismiss rulings from the *Nutanix* Action via stipulation. ECF No. 37. In addition, the parties agreed that Norton would not conduct his own discovery but, instead, would participate in discovery through his counsel's involvement in the *Nutanix* Action. ECF No. 39-1. Accordingly, Norton's counsel received Defendants' productions, totaling over 32,000 documents, in the *Nutanix* Action. SD ¶ 2.

On May 24, 2022, the Court held a joint CMC to discuss the case schedule for the *Nutanix* and *Norton* Actions.[1] The Court issued the Scheduling Order later that day, setting September 1, 2022 as the last day to amend the complaints without leave of court in both actions. *E.g.*, ECF No. 60. On September 1, 2022, Norton filed the FAC and the plaintiffs in the *Nutanix* Action filed the TAC. ECF No. 74-4; *Nutanix* ECF No. 281-3. Both complaints continue to challenge the same six statements the Court previously held were actionable, and both seek to resurrect statements that the Court previously dismissed. The new complaints also rely on voluminous exhibits reflecting materials Nutanix produced in the *Nutanix* Action. *Id.* However, while they contain similar allegations (in fact, some are verbatim), and are identical in their underlying theory of fraud, there are significant differences between the FAC and the TAC. *See infra* at 4.

On September 7, 2022, counsel in the *Norton* Action briefly discussed the anticipated

---

[1] In advance of the CMC, the parties filed a joint CMC statement that, *inter alia*, outlined the parties' respective positions regarding amendment. *Nutanix* ECF No. 265. Plaintiffs in both actions requested a deadline to amend the complaints without leave of court of December 21, 2022. *Id.* at 5-6. Defendants objected, explaining that the plaintiffs' counsel had repeatedly represented that they intended to amend the complaints based on the materials that were produced in connection with the parties' April 2022 mediation, and plaintiffs should not be given a "blank check" to amend at will until December 2022. *Id.* at 6-8.

motion to dismiss practice and agreed in principle that omnibus briefing of the motion to dismiss—*i.e.*, Defendants filing a single, omnibus opening and reply briefs and plaintiffs filing a single, omnibus opposition—made sense. SD ¶ 9. During the parties' subsequent communications, Defense counsel expressed continued agreement with the concept of streamlined motion to dismiss briefing, but expressly declined to agree to Norton's proposal to file another amended complaint. SD at ¶¶ 10-14. It was only after Defendants stated that they would oppose this Motion that Norton's counsel claimed that the differences between the FAC and the *Nutanix* TAC were purportedly the result of an unintentional filing day mistake. SD at ¶ 15.

## ARGUMENT

Local Rule 7-11 permits motions for administrative relief only for "miscellaneous administrative matters" such as "motions to exceed otherwise applicable page limitations or motions to file documents under seal[.]" L.R. 7-11. Administrative motions are impermissible where the relief sought is otherwise "governed by a federal statute, Federal Rule, local rule, or standing order of the assigned Judge." *Id.* As explained below, Norton's Motion violates both requirements for administrative motions and, therefore, should be denied.

## I.    THE MOTION IS NOT A "MISCELLANEOUS ADMINISTRATIVE MATTER"

Norton's Motion is not an "administrative matter"—it is a significant amendment to his FAC that seeks to substantively modify or delete over 60 paragraphs of the FAC and excise six exhibits cited therein comprising over 4,300 pages. Although Norton claims these changes reflect mere "idiosyncrasies between the [*Nutanix*] TAC and [*Norton*] FAC" (Mot. at 3), in fact they could not be more substantive. For example, Norton's FAC attached an exhibit reflecting Nutanix's historical financial data and cited that Exhibit to allege that Nutanix's "internal Company data showed that several sales productivity metrics were in decline during the class period" and that "[n]otwithstanding this internal data" Defendants "misleadingly stated on March 1, 2018 that Nutanix 'experienced record sales productivity' in Q2 FY2018." FAC ¶¶ 314-315 (citing Norton Ex. 19).

The financial data upon which Norton relies ***directly contradicts his claims***. As shown in the chart below, far from supporting the allegations that Nutanix's sales pipeline was "facing a ***significant decline***" at the time of the challenged statements (*e.g.*, Order at 12), Nutanix was experiencing ***significant growth*** in both starting pipeline at the outset of each quarter (solid bars below) and pipeline created each quarter (shaded bars). Indeed, in Q2'18 and Q3'18, the quarters that were the subject of the challenged statements, Nutanix ***grew*** total pipeline 79 and 63 percent year-over-year ("YoY"), respectively, and created ***$1.72 billion*** in new pipeline. SD ¶ 4.



Plaintiffs' theory of fraud regarding Nutanix's sales productivity fares no better. Specifically, in denying Nutanix's motion to dismiss, this Court credited plaintiffs' allegations that Nutanix sales organization was experiencing "general disorganization" and "high levels of attrition," and that "sales productivity was in fact poor" at the time of the challenged sales productivity statements—*i.e.*, statements made on Nutanix's Q2'18 and Q4'18 earnings calls. *E.g.*, Order at 12-13. Norton's FAC doubles down on these allegations: the FAC alleges that "Nutanix could not hire salespeople fast enough to replace those who had left" (FAC ¶ 187) and "[d]ue to Nutanix's high attrition, it was forced to replace experienced sales representatives (*i.e.*, 'ramped' sales representatives) with newer and less productive sales representatives (*i.e.*, 'unramped' sales representatives)." *Id.* ¶ 175. Norton claims these issues "caused a massive decline in sales productivity . . . which, in turn, caused revenue to decline." *Id.* ¶ 17.

The data included in Norton's FAC directly disproves *every aspect* of these allegations. Exhibit A reflects Nutanix's quarterly sales team headcount, and shows that Nutanix achieved strong and consistent sales team growth in FY18 (*i.e.*, the period relevant to this action): Nutanix increased ramped reps and total reps by 83 and 140 members, respectively, reflecting *nearly 40 percent growth* in each category. Unramped reps likewise were not "replacing" ramped reps as alleged; the percentage of ramped reps in the sales teams hovered between 57 and 65 percent in FY18, compared to 53 to 59 percent in FY17. And Nutanix's sales teams were *highly* productive. Exhibit B reflects Nutanix's key sales productivity metric, bookings per sales representative, and demonstrates that in Q2'18 and Q4'18, *i.e.*, the quarters at issue in the challenged statements, Nutanix had strong sales productivity, achieving record productivity for ramped and all active reps in Q2'18 and, in Q4'18, the second highest productivity for active reps and a new record productivity for ramped reps. *See also* SD ¶ 5. That productivity drove strong bookings (Exhibit C) and revenue (Exhibit D) growth throughout FY18.

Through his Motion, and among many other things, Norton seeks to excise this financial data and delete the FAC's allegations based on it. Thus, Norton's requested relief is anything but "administrative" and should be denied on that basis alone.

## II.   THE FEDERAL RULES GOVERN NORTON'S MOTION

Because Norton's Motion seeks to amend the FAC after the date set forth in the Scheduling Order, his Motion is subject to Federal Rules 16(c) and 15(a)(2). *Coleman v. Quaker Oats Co.*, 232 F.3d 1271, 1294 (9th Cir. 2000). This fact alone requires that the Motion be denied. L.R. 7-11. And, in any event, Norton provides no basis to suggest he could meet the standards under Federal Rules 16 and 15. Norton claims the differences between the FAC and TAC are explained by "last minute changes in the drafting process" despite attempts to "ensure that [they] would be substantially identical" by "exchanging multiple drafts and iterations of amended complaints with counsel in the *Nutanix* [A]ction." Mot. at 2. This excuse does not withstand scrutiny. Norton's counsel *is* counsel for City of Miami in the *Nutanix* Action and *signed* the TAC.

### CONCLUSION

For the foregoing reasons, Defendants request that the Court deny the Motion.

Dated:  September 19, 2022

WILSON SONSINI GOODRICH & ROSATI
Professional Corporation

By:  _/s/ Nina F. Locker_____
        Nina F. Locker

*Attorneys for Defendants*

# EXHIBIT A

## Nutanix's Ramped and Active Sales Representatives



*Source:* Declaration of Evan L. Seite in Support of Defendants' Opposition to Lead Plaintiff's Administrative Motion for Leave to File a Revised First Amended Complaint for Violations of the Federal Securities Laws ("Seite Declaration"), ¶ 4.

# EXHIBIT B

## Nutanix's Bookings per Active and Ramped Sales Representatives
## ($ thousands)



*Source:* Seite Declaration ¶ 4.

# EXHIBIT C

## Nutanix's Bookings Growth ($ millions)



*Source*: Seite Declaration ¶ 4.

# EXHIBIT D

## Nutanix's FY18 Revenue Growth ($ millions)



*Source*:  Seite Declaration ¶ 6.