1  ROBBINS GELLER RUDMAN
      & DOWD LLP
2  SHAWN A. WILLIAMS (213113)
   KENNETH J. BLACK (291871)
3  Post Montgomery Center
   One Montgomery Street, Suite 1800
4  San Francisco, CA  94104
   Telephone:  415/288-4545
5  415/288-4534 (fax)
   shawnw@rgrdlaw.com
6  kennyb@rgrdlaw.com
         – and –
7  JAMES E. BARZ
   FRANK A. RICHTER
8  200 South Wacker Drive, 31st Floor
   Chicago, IL  60606
9  Telephone:  312/674-4674
   312/674-4676 (fax)
10 jbarz@rgrdlaw.com
   frichter@rgrdlaw.com
11
   Lead Counsel for Lead Plaintiff
12
   [Additional counsel appear on signature page.]
13
                    UNITED STATES DISTRICT COURT
14
                   NORTHERN DISTRICT OF CALIFORNIA
15
                       SAN FRANCISCO DIVISION
16

17 | In re NUTANIX, INC. SECURITIES LITIGATION | ) | Case No. 3:19-cv-01651-WHO |
   |  | ) | Case No. 3:21-cv-04080-WHO |

18 _____  )    CLASS ACTION

19 JOHN P. NORTON, ON BEHALF OF THE           )    PLAINTIFFS' NOTICE OF MOTION,
   NORTON FAMILY LIVING TRUST UAD            )    MOTION FOR FINAL APPROVAL OF
20 11/15/2002, Individually and On Behalf of All )  CLASS ACTION SETTLEMENT AND
   Others Similarly Situated,                 )    APPROVAL OF PLAN OF ALLOCATION,
21                                            )    AND MEMORANDUM OF POINTS AND
                        Plaintiff,            )    AUTHORITIES IN SUPPORT THEREOF
22                                            )
        vs.                                   )    DATE:    October 4, 2023
23                                            )    TIME:    2:00 p.m. (via videoconference)
   NUTANIX, INC., DHEERAJ PANDEY, and         )    JUDGE:   Honorable William H. Orrick
24 DUSTON M. WILLIAMS,                        )
                                             )
25                     Defendants.           )
                                             )
26 _____  )

27

28

4880-9701-7457.v1

1

# TABLE OF CONTENTS

2

Page

3    I.    INTRODUCTION ................................................................................................1

4    II.    FACTUAL AND PROCEDURAL BACKGROUND.........................................3

5    III.    STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
            SETTLEMENTS................................................................................................5
6
            A.    Class Certification Remains Appropriate ...............................................5
7
            B.    The Settlement Warrants Final Approval ...............................................5
8
            C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)................7
9
                  1.    Rule 23(e)(2)(A): Plaintiffs and Their Counsel Have Adequately
10                        Represented the Class .......................................................................7

11                2.    Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at
                        Arm's Length After Mediation with an Experienced Mediator..................8
12
                  3.    Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate
13                        Considering the Costs, Risk, and Delay of Trial and Appeal ......................8

14                      a.    The Costs and Risks of Trial and Appeal Support Approval
                              of the Settlement ....................................................................9
15
                        b.    The Proposed Settlement Eliminates the Additional Cost
16                            and Delay of Continued Litigation .................................................10

17                4.    Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief
                        Is Effective .......................................................................................11
18
                  5.    Rule 23(e)(2)(C)(iii): Attorneys' Fees ......................................................11
19
                  6.    Rule 23(e)(2)(C)(iv): Other Agreements ...................................................12
20
                  7.    Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
21                        Members Equitably.............................................................................12

22          D.    The Remaining Ninth Circuit Factors Are Satisfied................................13

23                1.    Discovery Completed and Stage of the Proceedings ...............................13

24                2.    Lead Counsel Views This Good-Faith Settlement as Fair,
                        Reasonable, and Adequate ..................................................................14
25
                  3.    The Positive Reaction of Class Members to the Settlement .....................14
26
                  4.    The Settlement Amount .......................................................................15
27
                  5.    The Risk of Maintaining Class Certification .............................................15
28

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-
04080-WHO                                                                                                        - i -
4880-9701-7457.v1

1

2                                                                                                  **Page**

3
IV.     THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION ...........................15

4

V.      NOTICE TO THE CLASS SATISFIES DUE PROCESS .................................................16

5

VI.     CONCLUSION...........................................................................................................17
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

# TABLE OF AUTHORITIES

2

Page

3

**CASES**

4

*Campbell v. Facebook, Inc.*,
5
   951 F.3d 1106 (9th Cir. 2020) .................................................................................5

6

*Cheng Jiangchen v. Rentech, Inc.*,
   2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ...........................................................7

7

*Churchill Vill., L.L.C. v. Gen. Elec.*,
8
   361 F.3d 566 (9th Cir. 2004) ...............................................................................6, 8

9

*Class Plaintiffs v. City of Seattle*,
   955 F.2d 1268 (9th Cir. 1992) .............................................................................15

10

11

*Destefano v. Zynga, Inc.*,
   2016 WL 537946 (N.D. Cal. Feb. 11, 2016) ..........................................................9

12

*Dura Pharms., Inc. v. Broudo*,
13
   544 U.S. 336 (2005).............................................................................................9

14

*Fleming v. Impax Lab'ys Inc.*,
   2022 WL 2789496 (N.D. Cal. July 15, 2022).............................................5, 11, 17

15

16

*Foster v. Adams & Assocs., Inc.*,
   2022 WL 425559 (N.D. Cal. Feb. 11, 2022) .....................................................13, 14

17

*Gudimetla v. Ambow Educ. Holding*,
18
   2015 WL 12752443 (C.D. Cal. Mar. 16, 2015).....................................................10

19

*Hampton v. Aqua Metals, Inc.*,
   2021 WL 4553578 (N.D. Cal. Oct. 5, 2021)...........................................................12

20

21

*Hayes v. MagnaChip Semiconductor Corp.*,
   2016 WL 6902856 (N.D. Cal. Nov. 21, 2016) ....................................................17

22

*Hefler v. Wells Fargo & Co.*,
23
   2018 WL 6619983 (N.D. Cal. Dec. 18, 2018),
   *aff'd sub nom. Hefler v. Pekoc*,
24
   802 F. App'x 285 (9th Cir. 2020) ........................................................................8

25

*In re BofI Holding, Inc. Sec. Litig.*,
   2022 WL 9497235 (S.D. Cal. Oct. 14, 2022) ......................................................13

26

27

*In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*,
   2019 WL 2554232 (N.D. Cal. May 3, 2019)............................................................7

28

1

2                                                                                      **Page**

3

*In re Hyundai & Kia Fuel Econ. Litig.*,
4    926 F.3d 539 (9th Cir. 2019) ................................................................7

5    *In re Immune Response Sec. Litig.*,
6    497 F. Supp. 2d 1166 (S.D. Cal. 2007)..................................................9

7    *In re Lyft, Inc. Sec. Litig.*,
     2022 WL 17740302 (N.D. Cal. Dec. 16, 2022) ...................................12
8
     *In re Omnivision Techs., Inc.*,
9    559 F. Supp. 2d 1036 (N.D. Cal. 2008) ..........................................13, 14

10   *In re Online DVD-Rental Antitrust Litig.*,
11   779 F.3d 934 (9th Cir. 2015) ..............................................................12

12   *In re Veritas Software Corp. Sec. Litig.*,
     496 F.3d 962 (9th Cir. 2007) ..............................................................16
13
     *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*,
14   895 F.3d 597 (9th Cir. 2018) ................................................................5

15   *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
     2020 WL 4212811 (N.D. Cal. July 22, 2020),
16   *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022)...............................10

17   *Kastler v. Oh My Green, Inc.*,
18   2022 WL 1157491 (N.D. Cal. Apr. 19, 2022) .......................................5

19   *Longo v. OSI Sys., Inc.*,
     2022 U.S. Dist. LEXIS 158606 (C.D. Cal. Aug. 31, 2022)................8, 13
20
     *Mauss v. NuVasive, Inc.*,
21   2018 WL 6421623 (S.D. Cal. Dec. 6, 2018)........................................16

22   *Mendoza v. Hyundai Motor Co.*,
23   2017 WL 342059 (N.D. Cal. Jan. 23, 2017) .........................................6

24   *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*,
     688 F.2d 615 (9th Cir. 1982) .............................................................6, 8
25
     *Redwen v. Sino Clean Energy, Inc.*,
26   2013 WL 12303367 (C.D. Cal. July 9, 2013) .......................................9

27

28

**Page**

*Rodriguez v. Nike Retail Servs., Inc.*,
  2022 WL 254349 (N.D. Cal. Jan. 27, 2022) ..........................................................14

*Rodriguez v. W. Publ'g Corp.*,
  563 F.3d 948 (9th Cir. 2009) ...............................................................8, 14, 16

*Torrisi v. Tucson Elec. Power Co.*,
  8 F.3d 1370 (9th Cir. 1993) ...........................................................................10

*Vataj v. Johnson*,
  2021 WL 1550478 (N.D. Cal. Apr. 20, 2021) ..............................................15

*Vinh Nguyen v. Radient Pharms. Corp.*,
  2014 WL 1802293 (C.D. Cal. May 6, 2014) ..................................................10

**STATUTES, RULES AND REGULATIONS**

15 U.S.C.
  §78j(b)..............................................................................................................3, 9
  §78t(a)...................................................................................................................3
  §78u-4(a)(4)........................................................................................................11

Federal Rules of Civil Procedure
  Rule 23 ..........................................................................................................16, 17
  Rule 23(c)(1) ......................................................................................................15
  Rule 23(c)(2)(B) ................................................................................................16
  Rule 23(e).............................................................................................................6
  Rule 23(e)(1)(B) ................................................................................................16
  Rule 23(e)(2).................................................................................................6, 7, 8
  Rule 23(e)(2)(A) ..................................................................................................7
  Rule 23(e)(2)(B) ..................................................................................................8
  Rule 23(e)(2)(C) ..................................................................................................8
  Rule 23(e)(2)(C)(i) ..............................................................................................8
  Rule 23(e)(2)(C)(ii) ...........................................................................................11
  Rule 23(e)(2)(C)(iii) ..........................................................................................11
  Rule 23(e)(2)(C)(iv) ..........................................................................................12
  Rule 23(e)(2)(D) ................................................................................................12
  Rule 23(e)(3).........................................................................................................6

**SECONDARY AUTHORITIES**

Janeen McIntosh, Svetlana Starykh, and Edward Flores,
  *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*
  (NERA Jan. 24, 2023)........................................................................................15

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-
04080-WHO
4880-9701-7457.v1

- v -

**Page**

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL
OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-
04080-WHO
4880-9701-7457.v1

- vi -

1    **NOTICE OF MOTION AND MOTION**

2    TO:    ALL PARTIES AND THEIR ATTORNEYS OF RECORD

3    PLEASE TAKE NOTICE THAT at 2:00 p.m. on October 4, 2023, via videoconference, in

4    the courtroom of the Honorable William H. Orrick, at the United States District Court, Northern

5    District of California, Phillip Burton Federal Building & United States Courthouse, 450 Golden Gate

6    Avenue, San Francisco, CA 94102, lead plaintiff California Ironworkers Field Pension Trust

7    ("California Ironworkers") and named plaintiff City of Miami Fire Fighters' and Police Officers'

8    Retirement Trust ("City of Miami") in the *Nutanix* Action, and lead plaintiff John P. Norton, on

9    behalf of the Norton Family Living Trust UAD November 15, 2002 in the *Norton* Action, will and

10   hereby do respectfully move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry

11   of a judgment granting final approval of the proposed Settlement and entry of an order granting

12   approval of the proposed Plan of Allocation.

13   This Motion is based on the following Memorandum of Points and Authorities, as well as the

14   accompanying Declaration of Stephen R. Astley in Support of: (1) Plaintiffs' Motion for Final

15   Approval of Class Action Settlement and Approval of Plan of Allocation; and (2) Lead Counsel's

16   Motion for an Award of Attorneys' Fees and Expenses, and Award to Class Representative Pursuant

17   to 15 U.S.C. §78u-4(a)(4) ("Astley Declaration" or "Astley Decl."), with attached exhibits, all prior

18   pleadings and papers in these Actions, the arguments of counsel, and such additional information or

19   argument as may be required by the Court.

20   A proposed Final Judgment and Order of Dismissal with Prejudice and proposed Order

21   granting approval of the proposed Plan of Allocation will be submitted with Plaintiffs' reply

22   submission on September 27, 2023, after the September 13, 2023 deadline for Class Members to

23   object to the Settlement or Plan of Allocation has passed.

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**STATEMENT OF ISSUES TO BE DECIDED**

1.      Whether the Court should grant final approval of the Settlement.

2.      Whether the Court should approve the Plan of Allocation.

3.      Whether the Notice program satisfies Rule 23 and due process.

1        **MEMORANDUM OF POINTS AND AUTHORITIES**

2   **I.        INTRODUCTION**

3        The $71 million all-cash Settlement, after years of hard-fought litigation, is a tremendous

4   result for the Class.[1]  The Settlement, which represents approximately 15% of estimated aggregate

5   damages, is many multiples above the median percentage recovery for similar securities class action

6   cases.

7        The Settlement was reached only after the proceedings had reached a stage where a careful

8   evaluation of the Actions and the propriety of Settlement could be (and was) made to resolve both

9   the *Nutanix* and *Norton* Actions.  For example, Plaintiffs had, among other things: (i) conducted an

10  extensive investigation; (ii) filed detailed amended complaints that included – after obtaining and

11  reviewing documents – the Third Amended Complaint for Violations of the Federal Securities Laws

12  in the *Nutanix* Action ("*Nutanix* TAC") and the Revised First Amended Complaint for Violations of

13  the Federal Securities Laws in the *Norton* Action ("*Norton* RFAC," and with the *Nutanix* TAC, the

14  "Complaints"); (iii) successfully litigated Defendants' motions to dismiss and motion for judgment

15  on the pleadings; (iv) reviewed and analyzed 570,862 pages of documents produced by Defendants

16  and third parties; (v) filed an omnibus opposition to Defendants' motion to dismiss the *Nutanix* TAC

17  and the *Norton* RFAC; (vi) prepared detailed opening and responsive mediation statements; (vii)

18  participated in a mediation session on April 26, 2022, with the Honorable Layn Phillips (Ret.) of

19  Phillips ADR Enterprises; and (viii) after the April 2022 mediation was unsuccessful, conducted

20  months of settlement discussions with Judge Phillips' assistance, which ultimately resulted in a

21  "mediator's proposal," accepted by the parties.  As a result of these extensive litigation and

22  settlement efforts, Plaintiffs and Lead Counsel had a thorough understanding of the relative strengths

23  and weaknesses of the Class's claims and the propriety of settlement.

24

---

25  [1]    The terms of the Settlement are set forth in the Stipulation of Settlement dated April 7, 2023
    (*Nutanix* Action ECF 307-2; *Norton* Action ECF 117-2) (the "Stipulation").  All capitalized terms
26  not defined herein shall have the same meaning set forth in the Stipulation and in Plaintiffs' Notice
    of Unopposed Motion and Motion for Preliminary Approval of Proposed Settlement and
27  Memorandum of Points and Authorities in Support Thereof (*Nutanix* Action ECF 307; *Norton*
    Action ECF 117).

28

1    While Lead Counsel believe the Class's claims have significant merit, from the outset and

2    throughout the Actions, Defendants adamantly denied liability and asserted they possessed absolute

3    defenses to the Class's claims.  During extensive settlement negotiations, Lead Counsel made it clear

4    that while they were prepared to fairly assess the strengths and weaknesses of this case, they would

5    continue to litigate rather than settle for less than fair value.  Indeed, Plaintiffs and Lead Counsel

6    persisted in litigating for over nine months following the mediation until Judge Phillips issued a

7    "mediator's proposal" on February 6, 2023, which was accepted by the parties.  The result is an

8    exceptional settlement that Plaintiffs and Lead Counsel firmly believe is very favorable to the Class

9    and in its best interest.  *See* Astley Decl., ¶6.

10    Moreover, Plaintiffs – which include the type of institutional investors Congress envisioned

11    serving in that role when passing the Private Securities Litigation Reform Act of 1995 ("PSLRA") –

12    fully support the Settlement.[2]  The Class's reaction to date similarly reflects approval of the

13    Settlement.  Notice was provided to potential Class Members pursuant to the Order Preliminarily

14    Approving Settlement and Providing for Notice, as Amended, *Nutanix* Action ECF 311; *Norton*

15    Action ECF 121 (the "Preliminary Approval Order"), commencing June 8, 2023.  *See* Declaration of

16    Ross D. Murray Regarding Notice Dissemination, Publication, and Requests for Exclusion Received

17    to Date ("Murray Decl."), ¶¶4-12, attached as Ex. D to the Astley Declaration.  While the September

18    13, 2023 deadline to object to the Settlement and Plan of Allocation has not yet passed, to date no

19    objections have been received.[3]

20    Plaintiffs also request that the Court approve the proposed Plan of Allocation, which was

21    detailed in the Notice of Pendency and Proposed Settlement of Class Actions ("Notice").  The Plan

22    of Allocation governs how claims will be calculated and how Settlement proceeds will be distributed

23    among Authorized Claimants.  The Plan of Allocation is based on the analysis of Plaintiffs' damages

---

[2]    *See* Declaration of John Stonehouse on Behalf of California Ironworkers Field Pension Trust ("California Ironworkers Decl."), ¶6; Declaration of Ornel N. Cotera ("City of Miami Decl."), ¶5; Declaration of John P. Norton, on Behalf of the Norton Family Living Trust UAD 11/15/2002 ("Norton Decl."), ¶5, attached as Exs. A, B, and C, respectively, to the Astley Declaration.

[3]    Lead Counsel will address any timely objections in their reply brief, which is due on September 27, 2023.

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-04080-WHO

4880-9701-7457.v1

1  expert and subjects all Class Members to the same formulas for calculating out-of-pocket damages,

2  *i.e.*, the difference between what Class Members paid for their Nutanix securities and options during

3  the Class Period and what they would have paid had the alleged misstatements and omissions not

4  been made.

5         In short, the $71 million Settlement and the Plan of Allocation are fair and reasonable.  The

6  Settlement is an exceptional result for the Class.

7  **II.      FACTUAL AND PROCEDURAL BACKGROUND**

8         The Actions bring claims against Nutanix and its executive officers Dheeraj Pandey and

9  Duston M. Williams (together, "Defendants") for violations of §§10(b) and 20(a) of the Securities

10  Exchange Act of 1934.  Among other things, Plaintiffs allege that between November 30, 2017 and

11  May 30, 2019, Defendants made false and misleading statements concealing Nutanix's transition to a

12  new business model, whereby Defendants diverted spending from its customer pipeline – necessary

13  to stimulate new customer growth – to R&D of new software products.   These material

14  misrepresentations and omissions caused the prices of Nutanix securities and publicly traded options

15  to trade at artificially inflated prices.  Yet, as Plaintiffs further alleged, Defendants knew that the

16  reduced pipeline expenditures would result in lower customer growth and declining sales

17  productivity.  Despite Defendants' alleged attempts to conceal the negative sales trends, Defendants

18  were forced to make a series of partial disclosures reporting the disappointing financial results tied to

19  the Company's sales pipeline and productivity issues, which resulted in steep price declines of

20  Nutanix securities and publicly traded options and caused massive losses to investors.

21         To redress investors' damages caused by Defendants' alleged securities fraud, an initial class

22  action complaint was filed in this Court on March 29, 2019.  *Nutanix* Action ECF 1.  Following the

23  consolidation with several related class action complaints, a consolidated amended complaint was

24  filed on September 9, 2019, on behalf of investors who purchased or otherwise acquired Nutanix

25  securities between November 30, 2017 and May 30, 2019, inclusive.  *Nutanix* Action ECF 102.

26  After the Court granted Defendants' motion to dismiss with leave to amend (*Nutanix* Action ECF

27

28

1  121), a second consolidated amended complaint (*Nutanix* Action ECF 124) was partially upheld on

2  September 11, 2020 (*Nutanix* Action ECF 140).  Discovery commenced thereafter.

3      On May 28, 2021, a class action complaint ("*Norton* Complaint") was filed on behalf of

4  investors who transacted in publicly traded call options and/or put options of Nutanix between

5  November 30, 2017 and May 30, 2019.  *Norton* Action ECF 1.  The Court found the *Norton* Action

6  related to the *Nutanix* Action.  *Norton* Action ECF 8; *Nutanix* Action ECF 223.

7      While Defendants' motion to dismiss the *Norton* Complaint was pending, the parties

8  informed the Court that they wished to mediate the Actions with a private mediator.  *See Nutanix*

9  Action ECF 252; *Norton* Action ECF 52.  The parties engaged retired United States District Judge,

10  Layn R. Phillips, a highly experienced and nationally recognized mediator.  To facilitate meaningful

11  consideration of the parties' positions, Defendants produced documents on a confidential basis to

12  Plaintiffs.  The parties also exchanged mediation statements detailing their evidence and arguments

13  on the claims and defenses in the Actions.  During the April 26, 2022 mediation, Lead Counsel

14  further elaborated upon issues relating to falsity, scienter, and damages.

15      Despite the parties' diligent negotiations, however, the mediation proved unsuccessful, and

16  the parties resumed litigation, including negotiations regarding Defendants' compliance with

17  Plaintiffs' written discovery requests and further motion practice.  *Nutanix* Action ECF 262; *Norton*

18  Action ECF 56.  On May 27, 2022, Defendants moved for partial judgment on the pleadings in the

19  *Nutanix* Action, which Plaintiffs opposed.  *Nutanix* Action ECF 270, 274.  On June 16, 2022, the

20  Court denied Defendants' motion to dismiss the *Norton* Complaint.  *Norton* Action ECF 64.

21      A third consolidated amended complaint was filed in the *Nutanix* Action ("*Nutanix* TAC") on

22  September 1, 2022 to add new allegations, including allegations drawing facts from document

23  discovery, and to re-allege previous allegations.  *Nutanix* Action ECF 281.  Likewise, Norton filed a

24  first amended class action complaint in the *Norton* Action ("*Norton* FAC") to incorporate facts

25  drawn from document discovery and re-allege previous allegations.  *Norton* Action ECF 74-78.

26  Norton subsequently filed a Revised First Amended Complaint ("*Norton* RFAC") to conform the

27  *Norton* FAC to the *Nutanix* TAC.  *Norton* Action ECF 93-98.

28

1    Defendants withdrew their motion for partial judgment on the pleadings, as the *Nutanix* TAC

2    made it moot. *Nutanix* Action ECF 282-283. Instead, on November 14, 2022, Defendants filed an

3    omnibus motion to dismiss both Actions. *Nutanix* Action ECF 292; *Norton* Action ECF 105.

4    The parties had completed briefing and were preparing oral argument on the omnibus motion

5    to dismiss when – having continued with months of negotiations through Judge Phillips – they

6    agreed to a mediator's proposal dated February 6, 2023 to settle the Actions for $71 million.

7    **III.   STANDARDS FOR FINAL APPROVAL OF CLASS ACTION
         SETTLEMENTS**

8
     **A.   Class Certification Remains Appropriate**

9
10   In granting preliminary approval, the Court found this case appropriate for class certification

11   for settlement purposes, and appointed Plaintiffs as class representatives and Lead Counsel as class

12   counsel. *Nutanix* Action ECF 311; *Norton* Action ECF 121 at ¶¶3-4. Because nothing has changed

13   since preliminary approval that would undermine the Court's conclusion, class certification for

14   settlement purposes remains appropriate. *See Fleming v. Impax Lab'ys Inc.*, 2022 WL 2789496, at

15   *4 (N.D. Cal. July 15, 2022).

16   **B.   The Settlement Warrants Final Approval**

17   The Ninth Circuit recognizes a "'strong judicial policy that favors settlements, particularly

18   where complex class action litigation is concerned.'" *Campbell v. Facebook, Inc.*, 951 F.3d 1106,

     1121 (9th Cir. 2020).[4] "Deciding whether a settlement is fair is . . . best left to the district judge."
19
     *See In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, 895 F.3d 597, 611
20
     (9th Cir. 2018). Courts, however, should not convert settlement approval into an inquiry into the
21
     merits, as "'the court's intrusion upon what is otherwise a private consensual agreement negotiated
22
     between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment
23
     that the agreement is not the product of fraud or overreaching by, or collusion between, the
24
     negotiating parties.'" *Kastler v. Oh My Green, Inc.*, 2022 WL 1157491, at *3 (N.D. Cal. Apr. 19,
25

26

27   _____
     [4]    Citations are omitted and emphasis is added throughout unless otherwise indicated.
28

1   2022) (quoting *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of S.F.*, 688 F.2d 615, 625

2   (9th Cir. 1982)).

3          Federal Rule of Civil Procedure 23(e) requires judicial approval for the settlement of claims

4   brought as a class action and provides "the court may approve [a proposed settlement] only after a

5   hearing and only on finding that it is fair, reasonable, and adequate."  Fed. R. Civ. P. 23(e)(2).  To

6   determine whether a settlement is "fair, reasonable, and adequate," the Court must

7          consider[] whether: (A) the class representatives and class counsel have adequately
           represented the class; (B) the proposal was negotiated at arm's length; (C) the relief
8          provided for the class is adequate, taking into account: (i) the costs, risks, and delay
           of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief
9          to the class, including the method of processing class-member claims; (iii) the terms
           of any proposed award of attorney's fees, including timing of payment; (iv) and any
10         agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats
           class members equitably relative to each other.

11  *Id.*

12         In addition to the Rule 23(e)(2) considerations, courts in the Ninth Circuit consider the

13  following factors when examining whether a proposed settlement is fair, reasonable, and adequate:

14         (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely
           duration of further litigation; (3) the risk of maintaining class action status
15         throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery
           completed and the stage of the proceedings; (6) the experience and views of counsel;
16         (7) the presence of a governmental participant; and (8) the reaction of the class
           members to the proposed settlement.[5]
17

18  *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004).[6]

19         The Court's Preliminary Approval Order assessed the Settlement and found, after a

20  preliminary review, that it was fair, reasonable, and adequate, subject to further consideration at the

21  Settlement Hearing.  *See Nutanix* Action ECF 311; *Norton* Action ECF 121, ¶5.  The Court's

22

23  [5]   "Because there is no governmental entity involved in this litigation, this [seventh] factor is
      inapplicable."  *Mendoza v. Hyundai Motor Co.*, 2017 WL 342050, at *7 (N.D. Cal. Jan. 23, 2017).

24  [6]   The Northern District's Procedural Guidance for Class Action Settlements ("Northern District
25    Guidelines"), Final Approval, §1, states that the motion for final approval briefing should include
      information about the number of undeliverable class notices and claim packets, the number of valid
26    claims, the number of opt outs and objections and address any objections.  The number of
      undeliverable notices and claim packages is addressed in the Murray Decl., ¶10, as well as the
27    number of opt outs.  *Id.*, ¶16.  Lead Counsel will address any objections and the number of claims
      received in their reply brief to be filed September 27, 2023.

28  PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
    APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-
    01651-WHO; 3:21-cv-04080-WHO
    4880-9701-7457.v1

conclusion on preliminary approval is equally true now, as nothing has changed between May 19, 2023 and the present.  *See In re Chrysler-Dodge-Jeep EcoDiesel Mktg., Sales Pracs., & Prods. Liab. Litig.*, 2019 WL 2554232, at *2 (N.D. Cal. May 3, 2019) ("Those conclusions [drawn at preliminary approval] stand and counsel equally in favor of final approval now.").

### C.    The Proposed Settlement Satisfies the Requirements of Rule 23(e)(2)

#### 1.    Rule 23(e)(2)(A): Plaintiffs and Their Counsel Have Adequately Represented the Class

Plaintiffs and Lead Counsel have adequately represented the Class as required by Rule 23(e)(2)(A).  Lead Counsel are highly qualified and experienced in securities litigation, *see* Astley Decl., ¶¶117-118, actively pursued the claims of Nutanix investors in this Court, and zealously advocated for the Class's best interests throughout the litigation.  *See generally* California Ironworkers Decl.; City of Miami Decl.; and Norton Decl.; *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) (finding this factor satisfied where lead counsel "has significant experience in securities class action lawsuits").  The Settlement is the result of Lead Counsel's diligent prosecution of these Actions for years.  *See, e.g.*, *id.* (finding this factor satisfied where lead counsel vigorously pursued plaintiff's claims through multiple rounds of motions to dismiss and amended complaints).

In addition, Plaintiffs and Lead Counsel have no interests antagonistic to those of other Class Members; rather, their claims "arise from the same alleged conduct: the purchase of [Nutanix] stock at inflated prices based on Defendants' alleged . . . misstatements." *Id.*  Accordingly, Plaintiffs share the common interest in obtaining the largest possible recovery for Plaintiffs and the Class.  *See In re Hyundai & Kia Fuel Econ. Litig.*, 926 F.3d 539, 566 (9th Cir. 2019) ("To determine legal adequacy, we resolve two questions: '(1) do the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?'").  This factor weighs in favor of final approval.

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-04080-WHO
4880-9701-7457.v1

- 7 -

1

2.      **Rule 23(e)(2)(B): The Proposed Settlement Was Negotiated at Arm's Length After Mediation with an Experienced Mediator**

2

3       Rule 23(e)(2)(B) asks whether "the proposal was negotiated at arm's length." Fed. R. Civ. P.

4       23(e)(2)(B). "[The Ninth Circuit] put[s] a good deal of stock in the product of an arms-length, non-

5       collusive, negotiated resolution." *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 965 (9th Cir. 2009).

6       The parties here reached the Settlement only after a mediation session and extensive, hard-fought

7       litigation, including briefing Defendants' motions to dismiss three separate times, briefing

8       Defendants' motion for partial judgment on the pleadings, and undertaking significant document

9       discovery. Following months of additional negotiations overseen by Judge Phillips, the case was

10      ultimately resolved only when all parties accepted Judge Phillips' "mediator's proposal." *See* Astley

11      Decl., ¶74. Given the parties' efforts over the years, there can be no question that counsel "'had a

12      sound basis for measuring the terms of the settlement.'" *Longo v. OSI Sys., Inc.*, 2022 U.S. Dist.

13      LEXIS 158606, at *11 (C.D. Cal. Aug. 31, 2022). These facts demonstrate that the Settlement is the

14      result of arm's-length negotiations and "not the product of fraud or overreaching by, or collusion

15      between, the negotiating parties." *Officers for Just.*, 688 F.2d at 625.

3.      **Rule 23(e)(2)(C)(i): The Proposed Settlement Is Adequate Considering the Costs, Risk, and Delay of Trial and Appeal**

16

17      Pursuant to Rule 23(e)(2)(C), the Court considers "the costs, risks, and delay of trial and

18      appeal," and the relevant overlapping Ninth Circuit factors address "the strength of the plaintiffs'

19      case" and "the risk, expense, complexity, and likely duration of further litigation." Fed. R. Civ. P.

20      23(e)(2); *Churchill*, 361 F.3d at 575. While Plaintiffs believe their claims have merit and that they

21      would prevail on Defendants' omnibus motion to dismiss, they nevertheless recognize the numerous

22      risks and uncertainties in proceeding to trial. In fact, securities class actions "'are highly complex

23      and [litigating] securities class litigation is notably difficult and notoriously uncertain.'" *Hefler v.*

24      *Wells Fargo & Co.*, 2018 WL 6619983, at *13 (N.D. Cal. Dec. 18, 2018), *aff'd sub nom. Hefler v.*

25      *Pekoc*, 802 F. App'x 285 (9th Cir. 2020). As discussed below, the benefits conferred on Class

26      Members by the Settlement far outweigh the costs, risks, and delay of further litigation, and confirm

27      the adequacy and reasonableness of the Settlement.

28

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-04080-WHO
4880-9701-7457.v1

- 8 -

1

2

a.   **The Costs and Risks of Trial and Appeal Support**
**Approval of the Settlement**

3            To prove liability under §10(b) of the Exchange Act, a plaintiff must establish all elements of

4    the claim, including that the defendants knowingly or recklessly made the materially false and

5    misleading statements and that the material misrepresentations caused investors' losses. *See Dura*

6    *Pharms., Inc. v. Broudo*, 544 U.S. 336, 341-42 (2005). Plaintiffs would be required to prove each of

7    these elements to prevail, whereas Defendants needed only to succeed on one defense to defeat the

8    entire action. Although Plaintiffs are confident in the abilities of Lead Counsel to prove their case,

9    the risk of an unfavorable judgment or verdict was still real. *See Redwen v. Sino Clean Energy, Inc.*,

10   2013 WL 12303367, at *6 (C.D. Cal. July 9, 2013) ("Courts experienced with securities fraud

11   litigation 'routinely recognize that securities class actions present hurdles to proving liability that are

12   difficult for plaintiffs to clear.'").

13           Defendants advanced several plausible arguments disputing both liability and damages. Lead

14   Counsel anticipate that Defendants would have pressed these arguments throughout the litigation,

15   including at trial. For example, Defendants forcefully challenged the element of falsity. While

16   Plaintiffs alleged that Defendants' public statements regarding new customer growth and increased

17   sales productivity concealed Defendants' diversion of resources away from developing leads in

18   Nutanix's sales pipeline and resulted in lost sales productivity, Defendants contended that Nutanix's

19   internal documents showed that its sales pipeline and productivity were growing. Astley Decl., ¶84.

20   Defendants also argued that the alleged false and misleading statements were mere opinions, puffery,

21   or forward-looking statements accompanied by meaningful cautionary language. *Id.* In disputing

22   the requisite scienter, Plaintiffs anticipate that Defendants would have argued on summary judgment

23   that certain internal Nutanix documents showed that the sales pipeline and productivity were strong.

24   *Id.*, ¶87. And even if Plaintiffs had successfully opposed Defendants' arguments against scienter in

25   their pending motion to dismiss or a summary judgment motion, scienter is notoriously "complex

26   and difficult to establish at trial." *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1172

27   (S.D. Cal. 2007). Likewise, "in 'any securities litigation case, it is difficult for plaintiff to prove loss

28   causation and damages at trial.'" *Destefano v. Zynga, Inc.*, 2016 WL 537946, at *9 (N.D. Cal. Feb.

11, 2016).  Because Defendants had already targeted loss causation in their subsequently-withdrawn motion for judgment on the pleadings in the *Nutanix* Action, Plaintiffs anticipated facing similar arguments again had litigation proceeded.  *See* Astley Decl., ¶89.  Finally, to prove and calculate damages involves "complex analysis, requiring [a] jury to parse divergent positions of expert witnesses in a complex area of the law," rendering "the outcome of that analysis . . . inherently difficult to predict and risky."  *Vinh Nguyen v. Radient Pharms. Corp.*, 2014 WL 1802293, at *2 (C.D. Cal. May 6, 2014); *see also* Astley Decl., ¶90.

### b.    The Proposed Settlement Eliminates the Additional Cost and Delay of Continued Litigation

There remained much work for Plaintiffs in the Actions had the parties not reached the Settlement.  For instance, if the Settlement was not reached, the parties still faced completing document discovery, taking and/or defending many fact and expert depositions, litigating any discovery disputes that may arise, briefing class certification, summary judgment, motions to exclude experts, and motions *in limine*, and trying the case before a jury.  *See* Astley Decl., ¶91. And even if Plaintiffs had prevailed at trial, it would have taken potentially years to resolve any resulting appeals.  *See, e.g.*, *Hsu v. Puma Biotechnology, Inc.*, No. 8:15-cv-00865-DOC-SHK, ECF 913 (C.D. Cal. Aug. 3, 2022) (granting final approval of securities class action settlement 2.5 years after a February 4, 2019 jury verdict in plaintiff's favor following trial).  In addition, there were cognizable risks related to Nutanix's financial condition and the limited amount of insurance remaining to help fund any settlement.  For example, according to Nutanix's Form 10-Q for 3Q23, its total liabilities significantly exceeded its current assets, including its cash position.

"By contrast, the Settlement provides . . . timely and certain recovery."  *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, 2020 WL 4212811, at *9 (N.D. Cal. July 22, 2020), *aff'd*, 2022 WL 2304236 (9th Cir. June 27, 2022).  The Settlement at this juncture results in an immediate, substantial, and tangible recovery, without "the cost, complexity and time of fully litigating the case" – key factors in evaluating the reasonableness of a settlement. *Torrisi v. Tucson Elec. Power Co.*, 8 F.3d 1370, 1376 (9th Cir. 1993); *see also Gudimetla v. Ambow Educ. Holding*, 2015 WL 12752443, at *4 (C.D. Cal. Mar. 16, 2015) ("Although the Parties have engaged in multiple motions to dismiss

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-04080-WHO
4880-9701-7457.v1

- 10 -

1  and have amended their Complaint multiple times, Plaintiffs predict that discovery in preparation for

2  potential motions for summary judgment and trial would prove to be risky, costly, and reduce the

3  possible recovery for the Class," while the settlement, by contrast, conferred an immediate and

4  valuable cash benefit to the Class.).  Thus, the Settlement is a far better option for the Class.

### 4. Rule 23(e)(2)(C)(ii): The Proposed Method for Distributing Relief Is Effective

Plaintiffs and Lead Counsel have also made substantial efforts to notify the Class about the proposed Settlement under Rule 23(e)(2)(C)(ii).  Pursuant to the Preliminary Approval Order, a total of 154,004 Postcard Notices were emailed or mailed to potential Class Members and nominees; the Summary Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*; and the website created for these Actions contains key documents, including the Stipulation, Notice, Proof of Claim, and Preliminary Approval Order.  *See generally* Murray Decl.

The claims process here is identical to those commonly and effectively used in connection with other securities class action settlements.  The standard claim form requests the information necessary to calculate a claimant's claim amount pursuant to the Plan of Allocation.  The Plan of Allocation, discussed further in §IV below, will govern how claims will be calculated and, ultimately, how funds will be distributed to claimants.[7]

### 5. Rule 23(e)(2)(C)(iii): Attorneys' Fees

Rule 23(e)(2)(C)(iii) addresses "the terms of any proposed award of attorney's fees, including timing of payment."  Fed. R. Civ. P. 23(e)(2)(C)(iii).  As discussed in Lead Counsel's Memorandum of Points and Authorities in Support of Motion for an Award of Attorneys' Fees and Expenses, and Award to Class Representative Pursuant to 15 U.S.C. §78u-4(a)(4) ("Fee Memorandum"), submitted herewith, Lead Counsel seek an award of attorneys' fees of 30% of the

---

[7]  Once Notice and Administration Expenses, Taxes, Tax Expenses, and Court-approved attorneys' fees and expenses have been paid from the Settlement Fund, the remaining amount will be distributed pursuant to the Plan of Allocation.  *See* Stipulation, ¶5.4.  These distributions shall be repeated until the balance remaining in the Settlement Fund is *de minimis*.  *Id.*, ¶5.9.  If there are any *de minimis* residual funds that are not feasible or economical to reallocate, Plaintiffs propose that such funds be donated to the Investor Protection Trust, a 501(c)(3) non-profit dedicated to investor education and protection.  *Id.*; *see, e.g.*, *Fleming*, 2022 WL 2789496, at *2 (approving Investor Protection Trust as *cy pres* recipient in securities settlement).

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-01651-WHO; 3:21-cv-04080-WHO
4880-9701-7457.v1

- 11 -

1    Settlement Amount and expenses of $638,213.52, plus interest on both amounts.  This is the sole fee

2    and expense request being made in connection with resolving both the *Nutanix* Action led by

3    Robbins Geller as Lead Counsel and the *Norton* Action filed by Levi & Korsinsky.  This fee request

4    was fully disclosed in the Postcard Notice and Notice (Murray Decl., Exs. A and B, Notice at ¶5),

5    approved by Plaintiffs (California Ironworkers Decl., ¶¶7-8; City of Miami Decl., ¶¶6-7; Norton

6    Decl., ¶¶6-7), and is consistent with attorneys' fee awards in this District and Circuit.  *See* Fee

7    Memorandum, §III.B.

8              **6.      Rule 23(e)(2)(C)(iv): Other Agreements**

9              As stated in Plaintiffs' motion for preliminary approval (*Nutanix* Action ECF 307; *Norton*

10   Action ECF 117 at 15-16), the Settling Parties have entered into a standard supplemental agreement

11   which provides that if Class Members opt out of the Settlement such that the number of damaged

12   shares of Nutanix securities or options represented by such opt-outs equals or exceeds a certain

13   amount, Nutanix shall have the option to terminate the Settlement.  Stipulation, ¶7.5.  Again, such

14   agreements are common and do not undermine the propriety of the Settlement.  *See, e.g.*, *In re Lyft,*

15   *Inc. Sec. Litig.*, 2022 WL 17740302, at *6 (N.D. Cal. Dec. 16, 2022) ("The existence of a

16   termination option triggered by the number of class members who opt out of the settlement does not

17   by itself render the settlement unfair."); *Hampton v. Aqua Metals, Inc.*, 2021 WL 4553578, at *10

18   (N.D. Cal. Oct. 5, 2021) (same).  While the Supplemental Agreement is identified in the Stipulation

19   (Stipulation, ¶7.5), and the nature of the agreement is explained in the Stipulation and here, the terms

20   are properly kept confidential.[8]

21             **7.      Rule 23(e)(2)(D): The Proposed Plan of Allocation Treats Class
                         Members Equitably**

22

23             Pursuant to Rule 23(e)(2)(D), the Plan of Allocation must "treat[] class members equitably

24   relative to each other."  Fed. R. Civ. P. 23(e)(2)(D).  Assessment of the Settlement's Plan of

25   Allocation "'is governed by the same standards of review applicable to approval of the settlement as

26   ───────────────────────
     [8]      *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 948 (9th Cir. 2015) (finding that
27   settlement was not rendered unfair by the inclusion of an opt-out provision where "[o]nly the exact
     threshold, for practical reasons, was kept confidential").

28

1    a whole: the plan must be fair, reasonable and adequate.'" *In re Omnivision Techs., Inc.*, 559 F.

2    Supp. 2d 1036, 1045 (N.D. Cal. 2008).  The Plan of Allocation, developed in consultation with

3    Plaintiffs' damages expert, details how the Settlement proceeds will be distributed among

4    Authorized Claimants and provides formulas for calculating the recognized claim of each Class

5    Member based on each such Person's purchases or acquisitions of Nutanix securities and options

6    during the Class Period and if or when they sold.  Astley Decl., ¶¶94-96.  It is fair, reasonable, and

7    adequate because all eligible Class Members (including Plaintiffs) will be subject to the same

8    formulas for distribution of the Settlement and each Authorized Claimant will receive his, her or its

9    *pro rata* share of the distribution.  *See, e.g.*, *In re BofI Holding, Inc. Sec. Litig.*, 2022 WL 9497235,

10   at *8 (S.D. Cal. Oct. 14, 2022) ("no indication that the distribution and allocation methods proposed

11   . . . will result in unequitable treatment of Class Members" where the "Claims Administrator will

12   determine each Authorized Claimant's share of the Net Settlement Fund based upon the information

13   submitted in the Proof of Claim Form and based on the calculation of recognized loss, distributed on

14   a pro rata basis."); *Longo*, 2022 U.S. Dist. LEXIS 158606, at *18 ("Specifically, each authorized

15   claimant's share of the net settlement amount will be based on when the claimant acquired and sold

16   the subject securities.  Accordingly, this factor also weighs in favor of final approval.").

17        **D.    The Remaining Ninth Circuit Factors Are Satisfied**

18             **1.    Discovery Completed and Stage of the Proceedings**

19        The parties reached the Settlement after reviewing and analyzing 570,862 pages of

20   documents produced by Defendants and third parties.  *See* Astley Decl., ¶4.  That discovery provided

21   significant insight into the strengths and challenges of the Actions, and the Settling Parties had a

22   thorough understanding of the arguments, evidence, and potential witnesses that would inform the

23   trial, and did inform Plaintiffs' positions at the mediation and when considering Settlement.  *See id.*,

24   ¶¶4, 57.  There can be no question that Plaintiffs and Lead Counsel had sufficient information to

25   evaluate the case and the merits of the Settlement by the time it was reached.  *See Foster v. Adams &*

26   *Assocs., Inc.*, 2022 WL 425559, at *6 (N.D. Cal. Feb. 11, 2022) (finding the "[p]laintiffs were

27   'armed with sufficient information about the case' to broker a fair settlement" given the discovery

28

conducted, years of litigation, and multiple settlement conferences).  This factor weighs in favor of final approval of the Settlement.

### 2. Lead Counsel Views This Good-Faith Settlement as Fair, Reasonable, and Adequate

The Ninth Circuit recognizes that parties "'represented by competent counsel are better positioned than courts to produce a settlement that fairly reflects each party's expected outcome in litigation.'"  *Rodriguez*, 563 F.3d at 967.  Thus, courts accord great weight to the recommendations and opinions of experienced counsel.  *See Rodriguez v. Nike Retail Servs., Inc.*, 2022 WL 254349, at *4 (N.D. Cal. Jan. 27, 2022) (noting "the experience and views of counsel . . . favors approving the settlement" and highlighting counsel's "thorough understanding of the strengths and weaknesses of th[e] case and their extensive experience litigating prior . . . class action cases").

Lead Counsel have extensive experience representing plaintiffs in securities and other complex class action litigation and have negotiated numerous substantial class action settlements across the country.  Astley Decl., ¶¶117-118.  As a result of this experience, and with the assistance of sophisticated consultants when appropriate, Lead Counsel possessed a firm understanding of Plaintiffs' claims by the time the Settlement was reached, and based thereon, Lead Counsel concluded that the Settlement is an outstanding result for the Class.  Therefore, here, "[t]here is nothing to counter the presumption that Lead Counsel's recommendation is reasonable."  *Omnivision*, 559 F. Supp. 2d at 1043.

### 3. The Positive Reaction of Class Members to the Settlement

While the deadline to object to the Settlement is September 13, 2023, to date, no objections have been received.  Plaintiffs will address objections by Class Members, if any, in their reply papers.  Further, only one Class Member has opted out of the Class.  The Class's overwhelmingly positive reaction to the Settlement to date supports final approval.  *See Foster*, 2022 WL 425559, at *6 ("[The] Court 'may appropriately infer that a class action settlement is fair, adequate, and reasonable when few class members object to it.'").

1

2        **4.      The Settlement Amount**

3        The $71 million Settlement far exceeds the median securities settlement in terms of both

4    dollar amount and as a percentage of estimated damages.  As noted previously, the Settlement

5    represents approximately 15% of the estimated aggregate damages.  Astley Decl., ¶5.  This recovery

6    is many times the median percentage recovery of 1.6% in cases like this one, with estimated

7    damages of between $400 and $599 million, in 2022.  *See* Janeen McIntosh, Svetlana Starykh, and

8    Edward Flores, *Recent Trends in Securities Class Action Litigation: 2022 Full-Year Review*, at 17,

9    Fig. 18 (NERA Jan. 24, 2023) ("NERA Report").  The Settlement also far exceeds the median

10   settlement value for securities class actions of $13 million in 2022.  *See id.* at 15, Fig. 17.  The

11   NERA Report is attached as Ex. E to the Astley Declaration.

12        **5.      The Risk of Maintaining Class Certification**

13        Assuming the Actions advanced beyond the pleading stage, there is always the risk that the

14   Class would not be certified.  Certification of a litigation class is never guaranteed, and even if the

15   Court were to certify a litigation class here, Defendants may later have moved to decertify the Class

16   or seek to shorten the Class Period.  Rule 23(c)(1) provides that a class certification order may be

17   altered or amended at any time before a decision on the merits.  This factors weighs in favor of

18   approval.

                                    *        *        *

19        In sum, Lead Counsel attained an exceptional result for the Class.  The Court should find that

20   the Settlement is fair, reasonable, and adequate, and should grant final approval.

21   **IV.   THE COURT SHOULD APPROVE THE PLAN OF ALLOCATION**

22        In addition to seeking final approval of the Settlement, Plaintiffs seek final approval of the

23   Plan of Allocation that the Court preliminarily approved on May 19, 2023.  *Nutanix* Action ECF

24   311; *Norton* Action ECF 121.  The Plan of Allocation is considered separately from the fairness of

25   the Settlement but is nevertheless governed by the same legal standards: the plan must be fair and

26   reasonable.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1284 (9th Cir. 1992); *see also*

27   *Vataj v. Johnson*, 2021 WL 1550478, at *10 (N.D. Cal. Apr. 20, 2021) ("'[C]ourts recognize that an

28

1    allocation formula need only have a reasonable, rational basis, particularly if recommended by

2    experienced and competent counsel.'") (alteration in original).  As noted, the Plan of Allocation here

3    provides an equitable basis to allocate the Net Settlement Fund among all Authorized Claimants

4    (Class Members who submit an acceptable Proof of Claim and who have a recognized loss under the

5    Plan of Allocation).  Individual claimants' recoveries will depend on when they bought Nutanix

6    securities or options during the Class Period and whether and when they sold their shares or options.

7    Authorized Claimants will recover their proportional "*pro rata*" amount of the Net Settlement Fund.

8    This is the traditional and reasonable approach to allocating securities settlements.  *See, e.g.*, *Mauss*

9    *v. NuVasive, Inc.*, 2018 WL 6421623, at *4 (S.D. Cal. Dec. 6, 2018) ("'A plan of allocation that

10   reimburses class members based on the extent of their injuries is generally reasonable.'").  To date

11   there has been no objection to the Plan of Allocation.  As a result, the Plan of Allocation is fair and

12   reasonable and should be approved.

13   **V.    NOTICE TO THE CLASS SATISFIES DUE PROCESS**

14        A district court "must direct notice in a reasonable manner to all class members who would

15   be bound by the proposal," Fed. R. Civ. P. 23(e)(1)(B), and "must direct to class members the best

16   notice that is practicable under the circumstances, including individual notice to all members who

17   can be identified through reasonable effort," Fed. R. Civ. P. 23(c)(2)(B).  The notice also must

18   describe "'the terms of the settlement in sufficient detail to alert those with adverse viewpoints to

19   investigate and to come forward and be heard.'"  *Rodriguez*, 563 F.3d at 962.  The PSLRA further

20   requires that the settlement notice include a statement explaining a plaintiff's recovery "to allow

21   class members to evaluate a proposed settlement."  *In re Veritas Software Corp. Sec. Litig.*, 496 F.3d

22   962, 969 (9th Cir. 2007).

23        The substance of the Notice, which the Court preliminarily approved as amended, satisfies

24   Rule 23 and due process.  The Claims Administrator has emailed or mailed a total of 154,004 copies

25   of the Court-approved Postcard Notice to potential Class Members and their nominees who could be

26   identified with reasonable effort.  *See* Murray Decl., ¶11.  In addition, the Court-approved Summary

27   Notice was published in *The Wall Street Journal* and transmitted over *Business Wire*.  *Id.*, ¶12.  The

28   PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
     APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-
     01651-WHO; 3:21-cv-04080-WHO
     4880-9701-7457.v1

1   Claims Administrator also provided all information regarding the Settlement online through the

2   Settlement website. *Id.*, ¶14.  The Notice provides the necessary information for Class Members to

3   make an informed decision regarding the proposed Settlement, as required by the PSLRA.  The

4   Notice further explains that the Net Settlement Fund will be distributed to eligible Class Members

5   who submit valid and timely Proofs of Claim under the Plan as described in the Notice.  The notice

6   program here fairly apprises Class Members of their rights with respect to the Settlement, is the best

7   notice practicable under the circumstances, and complies with the Court's Preliminary Approval

8   Order, Rule 23, the PSLRA, and due process.  *See, e.g.*, *Fleming*, 2022 WL 2789496, at *5-*6;

9   *Hayes v. MagnaChip Semiconductor Corp.*, 2016 WL 6902856, at *4 (N.D. Cal. Nov. 21, 2016).

10  **VI.    CONCLUSION**

11          Plaintiffs and Lead Counsel achieved an outstanding settlement for the Class.  Plaintiffs

12  therefore respectfully request that the Court approve the Settlement and Plan of Allocation.

13  DATED:  August 30, 2023                    Respectfully submitted,

14                                             ROBBINS GELLER RUDMAN
                                                 & DOWD LLP
15                                             STEPHEN R. ASTLEY
                                               (admitted *pro hac vice*)
16                                             ROBERT J. ROBBINS
                                               (admitted *pro hac vice*)
17                                             ANDREW T. REES
                                               (admitted *pro hac vice*)

18

19                                                  s/ Stephen R. Astley (*with consent*)
                                                    STEPHEN R. ASTLEY
20
                                               225 NE Mizner Boulevard, Suite 720
21                                             Boca Raton, FL  33432
                                               Telephone:  561/750-3000
22                                             561/750-3364 (fax)
                                               sastley@rgrdlaw.com
23                                             rrobbins@rgrdlaw.com
                                               arees@rgrdlaw.com

24

25

26

27

28

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

ROBBINS GELLER RUDMAN
  & DOWD LLP
JAMES E. BARZ
(admitted *pro hac vice*)
FRANK A. RICHTER
(admitted *pro hac vice*)
200 South Wacker Drive, 31st Floor
Chicago, IL 60606
Telephone: 630/696-4107
jbarz@rgrdlaw.com
frichter@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
SHAWN A. WILLIAMS (213113)
KENNETH J. BLACK (291871)
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415/288-4545
415/288-4534 (fax)
shawnw@rgrdlaw.com
kennyb@rgrdlaw.com

ROBBINS GELLER RUDMAN
  & DOWD LLP
THEODORE J. PINTAR
655 West Broadway, Suite 1900
San Diego, CA 92101
Telephone: 619/231-1058
619/231-7423 (fax)
tedp@rgrdlaw.com

*Lead Counsel for Lead Plaintiff California
Ironworkers Field Pension Trust and Plaintiff
City of Miami Fire Fighters' and Police
Officers' Retirement Trust*

LEVI & KORSINSKY, LLP
ADAM M. APTON (SBN 316506)
ADAM C. MCCALL (SBN 302130)
75 Broadway, Suite 200
San Francisco, CA 94111
Telephone: 415/373-1671
415/484-1294 (fax)
aapton@zlk.com
amccall@zlk.com

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-
01651-WHO; 3:21-cv-04080-WHO
4880-9701-7457.v1

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LEVI & KORSINSKY, LLP
SHANNON L. HOPKINS
(admitted *pro hac vice*)
GREGORY M. POTREPKA
(admitted *pro hac vice*)


            s/ Shannon L. Hopkins
        SHANNON L. HOPKINS

1111 Summer Street, Suite 403
Stamford, CT  06905
Telephone:  212/363-7500
866/367-6510 (fax)
shopkins@zlk.com
gpotrepka@zlk.com

*Counsel for Lead Plaintiff John P. Norton, on behalf of the Norton Family Living Trust UAD 11/15/2002, and Additional Counsel for Plaintiff City of Miami Fire Fighters' and Police Officers' Retirement Trust*

PLAINTIFFS' NOTICE OF MOTION, MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND
APPROVAL OF PLAN OF ALLOCATION, AND MEMORANDUM OF POINTS AND AUTHORITIES - Case Nos. 3:19-cv-
01651-WHO; 3:21-cv-04080-WHO
4880-9701-7457.v1

- 19 -